Tammy Hussin (Bar No. 155290)
Lemberg & Associates, LLC
6404 Merlin Drive
Carlsbad, CA 92011
Telephone (855) 301-2100 ext. 5514
thussin@lemberglaw.com

Lemberg & Associates, LLC
1100 Summer Street
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile: (203) 653-3424

Attorneys for Plaintiff,
Mark Peters and Denise Peters

FILED
NOV - 7 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mark Peters and Denise Peters,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>Rash Curtis & Associates; and DOES 1-10, inclusive,<br><br>　　　　Defendants. | Case No. **C12-5727**<br><br>**COMPLAINT FOR DAMAGES**<br>**1. VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 ET. SEQ;**<br>**2. VIOLATION OF FAIR DEBT COLLECTION PRATICES ACT, CAL.CIV.CODE § 1788 ET. SEQ.**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT FOR DAMAGES

For this Complaint, the Plaintiff, Mark Peters and Denise Peters, by undersigned counsel, state as follows:

## JURISDICTION

1. This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and the invasions of Plaintiffs' personal privacy by the Defendants and its agents in their illegal efforts to collect a consumer debt.

2. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendants transact business here and a substantial portion of the acts giving rise to this action occurred here.

## PARTIES

4. Plaintiffs, Mark Peters ("Mark") and Denise Peters ("Denise" and collectively referred to as "Plaintiffs"), are each an adult individual residing in Martinez, California, and are each a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

5. Defendant Rash Curtis & Associates ("Rash"), is a California business entity with an address of 190 South Orchard Avenue, Suite C250, Vacaville, California 95688, operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

6. Does 1-10 (the "Collectors") are individual collectors employed by Rash and whose identities are currently unknown to the Plaintiffs. One or more of the Collectors may be joined as parties once their identities are disclosed through discovery.

7. Rash at all times acted by and through one or more of the Collectors.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

### A. The Debt

8. Plaintiffs allegedly incurred a financial obligation (the "Debt") to a creditor (the "Creditor").

9. The Debt arose from services provided by the Creditor which were primarily for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

10. The Debt was purchased, assigned or transferred to Rash for collection, or Rash was employed by the Creditor to collect the Debt.

11. The Defendants attempted to collect the Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

### B. Rash Engages in Harassment and Abusive Tactics

12. Prior to and within the last year, Rash contacted Plaintiffs and other third parties in an attempt to collect the Debt.

13. At all times herein mentioned, Plaintiffs and other third parties were primarily contacted by Rash's collector, Kristina Crow (also known as "Tina" and hereinafter referred to as such).

14. During the initial conversations with Plaintiffs, Tina demanded immediate payment of the Debt.

15. During several conversations, Tina threatened that unless Plaintiffs immediately paid the Debt, suit would be filed. Tina told Plaintiffs that if suit is filed, Rash would add legal fees and costs to the Debt, which would cause the amount of the Debt to double when filed.

16. Tina often times spoke to Mark using an oppressive and condescending tone, telling him that "terrible things" would happen if the Debt was not paid, and often times demeaning Mark for not being able to pay his bills.

17. In an effort to avoid legal action and the doubling of the Debt as threatened, Plaintiffs felt coerced into making a payment agreement with Rash in or around January of 2012.

18. Despite having a payment agreement in place, Tina continued placing calls to Plaintiffs in an attempt to collect the Debt, and continued her demeaning tactics and abuse when speaking to Plaintiffs.

19. Tina contacted Plaintiff's business partner, Kristy Roberts ("Roberts"), in an attempt to collect the Debt.

20. Tina disclosed the existence of the Debt to Roberts.

21. Tina made slanderous remarks about Mark to Roberts, including but not limited to telling Roberts that she should no longer do business with him and stated that Mark was not trustworthy and should not be her business partner.

22. Tina's conversation with Roberts caused Mark's business relationship with Roberts to become uncomfortable and strained, and Mark believes that the comments resulted and will continue to result in a loss of revenue to Mark. Tina's conversation with Roberts caused Mark to feel embarrassed and humiliated, and continue to cause Mark to experience a feeling of a loss of integrity and respect with his business partner.

23. On June 6, 2102, Mark emailed Rash and informed it of Tina's inappropriate conduct. Mark requested that Tina no longer communicate with Plaintiffs and/or third parties, and further requested that Plaintiffs only be communicated with in writing. Thereafter, Rash and Tina continued to place calls to Plaintiffs and third parties.

24. Tina contacted Denise on her cellular telephone during working hours while Denise at her place of employment. Denise advised Tina that calls to her cellular phone during working hours were inconvenient and requested to Tina to not call during normal business hours.

25. Thereafter, Tina continued to call Denise on her cellular phone during working hours.

26. Tina called Denise's co-worker in an attempt to collect the Debt.

27. Tina disclosed the existence of the Debt to Denise's co-worker, and made slanderous and disparaging remarks regarding Plaintiffs to the co-worker similar to the aforementioned remarks to Mark's business partner.

28. Rash filed suit against Plaintiffs in August 2012 in an attempt to collect the Debt. On September 21, 2012, a process server appeared at Plaintiff's business partner's personal residence in an attempt to serve Mark with the summons and complaint.

29. While the process server was at Robert's home, Roberts called Mark to inform him of the process server. Mark asked to speak with the process server.

30. The process server got on the phone to speak with Mark. Mark asked the process server why service was attempted at Robert's home rather than to his home. The process server told Mark that Roberts' home address was the only address that had been provided to him by Rash, and that Rash did not provide the process server with Mark's home or business address. Mark then provided the process server with his address and further told the process server that he was home and to please bring the summons and complaint to his home to effect service. That same day, the process server went to Mark's home and served Mark with the summons and complaint.

31. At all times prior to filing suit against Plaintiffs, Rash had Plaintiffs' home and work addresses. Mark did not use Roberts' personal residence as a place of business, and had never provided Rash with Roberts' address.

32. Plaintiffs are informed and believe and thereon allege that Rash intentionally gave Roberts' address to the process server in a further attempt to oppress, humiliate and embarrass Mark. Rash's attempted service of the complaint at Roberts' home caused and continues to cause an even greater strain on Marks' relationship with his business partner.

33. As a direct consequence of the Rash's acts, practices and conduct, Plaintiffs suffered and continues to suffer from humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment, and potential loss of income due to the strained business relationship.

34. The conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

## COUNT I
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692, et seq.

35. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

36. The Defendants contacted third parties for purposes other than to confirm or correct location information, in violation of 15 U.S.C. § 1692c(b).

37. The Defendants informed third parties of the nature of Plaintiffs' debt and stated that the Plaintiffs owed a debt, in violation of 15 U.S.C. § 1692b(2).

38. The Defendants contacted the Plaintiffs after having received written notification to cease all telephone communications, in violation of 15 U.S.C. § 1692c(c).

39. The Defendants contacted Plaintiffs at a place, during a time, and in a manner known to be inconvenient for Plaintiffs, in violation of 15 U.S.C. § 1692c(a)(1).

40. The Defendants engaged in behavior the natural consequence of which was to harass, oppress, or abuse the Plaintiffs in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d.

41. The Defendants caused a phone to ring repeatedly and engaged the Plaintiffs in telephone conversations, with the intent to annoy and harass, in violation of 15 U.S.C. § 1692d(5).

42. Defendants made false and deceptive and misleading representations as a means to collect the debt, in violation of 15 U.S.C. § 1692e.

43. The Defendants used unfair and unconscionable means to collect a debt, in violation of 15 U.S.C. § 1692f.

44. The Defendants threatened to collect an amount not authorized by the agreement creating the debt, in violation of 15 U.S.C. § 1692f(1).

45. The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the FDCPA, including every one of the above-cited provisions.

46. The Plaintiffs are entitled to damages as a result of the Defendants' violations.

## COUNT II
## VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, Cal. Civ. Code § 1788 et seq.

47. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

48. The Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788 et seq. ("Rosenthal Act") prohibits unfair and deceptive acts and practices in the collection of consumer debts.

49. Rash Curtis & Associates, in the regular course of business, engages in debt collection and is a "debt collector" as defined by Cal. Civ. Code § 1788.2(c).

50. The Defendants caused a telephone to ring repeatedly and engaged the Plaintiff in continuous conversations with an intent to annoy the Plaintiffs, in violation of Cal. Civ. Code § 1788.11(d).

51. The Defendants failed to comply with the provisions of 15 U.S.C. § 1692, *et seq.*, in violation of Cal. Civ. Code § 1788.13(e).

52. The Defendants communicated with the Plaintiffs' employer about the debt, without consent of the Plaintiffs' attorney or the Plaintiffs, and without the purpose of verifying location or employment information, in violation of Cal. Civ. Code § 1788.12(a).

53. The Defendants did not comply with the provisions of Title 15, Section 1692 of the United States Code, in violation of Cal. Civ. Code § 1788.17.

54. The Plaintiffs are entitled to damages as a result of the Defendants' violations.

## COUNT III
## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION AND PUBLIC DISCLOSURE OF PRIVATE FACTS

55. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

56. The Restatement of Torts, Second, § 652B defines intrusion upon seclusion as, "One who intentionally intrudes…upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

57. California further recognizes the Plaintiffs' right to be free from invasions of privacy, thus the Defendants violated California state law.

58. The Defendants intentionally intruded upon Plaintiffs' right to privacy by continually harassing Plaintiffs with the above referenced telephone calls and conversations with third parties, and by disclosing the existence of the Debt to third parties.

59. The conduct of Rash and Tina in engaging in the illegal collection activities resulted in multiple invasions of privacy in such a way as would be considered highly offensive to a reasonable person.

60. As a result of the intrusions and invasions, the Plaintiffs are entitled to actual damages in an amount to be determined at trial from the Defendants.

61. All acts of the Defendants and Tina were committed with malice, intent, wantonness, and recklessness, and as such, the Defendants are subject to punitive damages.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

63. The acts, practices and conduct engaged in by the Defendants vis-à-vis the Plaintiffs was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

64. The foregoing conduct constitutes the tort of intentional infliction of emotional distress under the laws of the State of California.

65. All acts of Defendants and Tina complained of herein were committed with malice, intent, wantonness, and recklessness, and as such, Defendants are subject to imposition of punitive damages.

66. Defendants could reasonably foresee its conduct would cause mental anguish and severe emotional distress to Plaintiffs.

67. Plaintiffs did indeed suffer mental anguish and severe emotional distress including continued humiliation, injury to business reputation, embarrassment, and shame.

68. Defendant's conduct resulted in reckless infliction of emotional distress under the laws of the State of California.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that judgment be entered against the Defendants:

    A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the Defendants;

    B. Statutory damages of $1,000.00 for each Plaintiff pursuant to 15 U.S.C. §1692k(a)(2)(A) against the Defendants;

C. Costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against the Defendants;

D. Actual damages pursuant to Cal. Civ. Code § 1788.30(a);

E. Statutory damages of $1,000.00 for each Plaintiff for knowingly and willfully committing violations pursuant to Cal. Civ. Code § 1788.30(b);

F. Actual damages from the Defendants for the all damages including emotional distress suffered as a result of the intentional, reckless, and/or negligent FDCPA violations and intentional, reckless, and/or negligent invasions of privacy in an amount to be determined at trial for the Plaintiffs;

G. Punitive damages; and

H. Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  November 7, 2012          TAMMY HUSSIN


By:   /s/  Tammy Hussin
Tammy Hussin, Esq.
Lemberg & Associates, LLC
Attorney for Plaintiff Mark Peters and Denise Peters